# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL J. MODJESKA,**

    Plaintiff,

  v.                                             Case No. 12-C-1020

**UNITED PARCEL SERVICE INC.,**

    Defendant.

## DECISION AND ORDER

Plaintiff Michael J. Modjeska ("Modjeska") filed this action for damages, injunctive relief, and attorney's fees alleging that his former employer, Defendant United Parcel Service, Inc. ("UPS"), violated the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"), and the Americans with Disabilities Act of 1990, as amended in 2008, 42 U.S.C. § 12101, *et seq.* ("ADA"). Presently before the Court are Modjeska's motion to compel UPS to answer questions one and two of his third set of document requests and to produce a witness in response to his Rule 30(b)(6) deposition notice (ECF No. 20), and his Civil Local Rule 7(h) (E.D. Wis.) motion to compel expert discovery (ECF No. 29). The motions are fully briefed and addressed herein.

### STANDARD FOR DISCOVERY

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal civil cases. Federal discovery rules are liberal in order to assist in

preparation for trial and settlement of litigated disputes. *See Bond v. Utreras,* 585 F.3d 1061, 1075 (7th Cir. 2009). The Court's discovery processes and rules are used to require litigants to produce otherwise private information. *See id.*

While a party may object to discovery requests on the ground of relevance, that term is broadly defined under Rule 26. Rule 26(b)(1) allows parties to discover information "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). *See Nw. Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 930 (7th Cir. 2004). District courts have broad discretion in determining motions to compel. *See Peals v. Terre Haute Police Dep't,* 535 F.3d 621, 631 (7th Cir. 2008). "Although there is a strong public policy in favor of disclosure of relevant materials, Rule 26(b)(2) of the Federal Rules of Civil Procedure empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002). A court shall limit discovery if it determines the discovery sought is unreasonably cumulative or duplicative, the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, or that the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

## MOTION TO COMPEL ANSWERS AND PRODUCTION

Although many of Modjeska's allegations are contested, some context is necessary to the analysis of Modjeska's motion to compel answers and production. The following limited background is largely based on the allegations of the Complaint.

### Factual Background

Modjeska, who was a part-time supervisor for UPS, alleges he had a disability due to a left arm injury that he sustained at work on February 23, 2011, which was projected to continue unless and until he had surgery, and a learning disability which limits his short-term memory, auditory learning and reading comprehension. Modjeska's claims involve the conduct of his supervisor, Anthony Poole ("Poole"), UPS Regional Manager Sherri Christian ("Christian"), and UPS Security Officer Tony Chavez ("Chavez").

Modjeska advised Poole of his left arm work-related injury and that a physician had advised that he not perform heavy work with his left arm. Despite that knowledge, on May 3, 2011, when Modjeska arrived a minute late for work Poole had him do 20 pushups, further injuring his left arm.

On May 20, 2011, UPS supervisors ordered Modjeska to perform work contrary to his medical restrictions. Modjeska gave Christian a letter protesting UPS's failure to accommodate his left arm disability, but she took no remedial action in response to the letter. Modjeska's disability increased to the extent that by August 30, 2011, his physician prescribed "no left upper extremity work."

On September 1, 2011, Modjeska processed returned packages which had arrived at the airport too late for their designated flight. Because of his physical disability, Modjeska could not lift all of the packages in a returned package bag and had to remove some of them before he began the processing. Modjeska inadvertently failed to process the packages he had removed from the bag. The next day Modjeska informed supervisor Nate Castro ("Castro") of the mistake.

Upon learning of the error, Christian informed Chavez that more than 70 packages had not been processed—rather than 35 packages as Modjeska had reported. She felt Modjeska's estimate of 35 missed packages was dishonest and requested that Chavez find out more information from Modjeska. (Christian Dep. 123-26.) (ECF No. 25-2.) As a result of this request, Chavez interrogated Modjeska from about 8:50 p.m. on September 2, 2011, until 1:55 a.m. the next morning. Modjeska told Chavez that he removed packages from the returned package bag because of his left arm disability and mistakenly failed to process the removed packages.

Chavez told Modjeska to write a statement about the incident; however, when Modjeska wrote that he had made a mistake, Chavez ordered him to re-write the statement to state that he had lied, and Chavez dictated the re-written statement. Modjeska told Chavez about his learning disability, that it was difficult for him to comprehend what he read, and that he had poor short-term memory. He requested extra time to read and understand the re-written statement, but Chavez refused the request.

Chavez then informed Modjeska that he was going to be fired and that he would receive poor references and be unable to get another job. Chavez indicated that in order to avoid the poor references Modjeska had to resign for personal reasons. Modjeska said that he wanted to go home to think about whether to resign and discuss it with his wife. Chavez told Modjeska that if he did not resign on the spot his employment would be terminated and he would receive bad references. On September 3, 2011 at 1:55 a.m., after five hours of interrogation, because of Chavez's threats and refusal to accommodate his learning disability, Modjeska signed a document stating he resigned for personal reasons, notwithstanding his desire to continue to work.

## Contested Written Discovery Requests

*(1) Question number one* requests counseling or disciplinary- or performance-related documents, including electronically stored information ("ESI"), concerning Christian's performance while she was employed as the Wisconsin HUB Division Manager from 2006 through 2012, and all documents relating to her transfer/demotion to Human Resources in the Madison area and St. Paul in 2012.

*(2) Question number two* requests all performance-related documents, including ESI, relating to Poole while he was employed in the position of Twilight Sort Manager including, but not limited to, any performance-related documents concerning Poole's direction to Modjeska and other employees that they perform pushups, failure to report work-related injuries or failure to comply with work restrictions.

### *UPS's Response*

UPS maintains that it has already provided information from these managers' files that is arguably relevant to this case and that the additional personnel information Modjeska seeks is not reasonably calculated to lead to the discovery of admissible evidence. Specifically, UPS states it has already produced any information in Christian's or Poole's files regarding: (1) failure to report work restrictions; (2) failure to comply with work restrictions; (3) treatment of individuals with work restrictions; (4) treatment of individuals with disabilities; (5) failure to accommodate disabilities; (6) treatment of Modjeska at any time; (7) Modjeska's 2011 work restrictions; and (8) the spring 2011 incident involving Poole's requirement that part-time supervisors who are late to work perform push-ups.

### *Ruling*

UPS's production of portions of Christian's and Poole's files is inadequate. Modjeska sought personnel files of the three supervisors directly involved in his claims. Although UPS produced the entire personnel file of the third supervisor, Castro, it limited the production of Christian's and Poole's personnel files to those portions relating to work restrictions and/or disabilities and Modjeska. Modjeska has offered to enter into a confidentiality agreement so that information concerning Christian and Poole would not be used except in this action.

District courts within this circuit have required the production of personnel files of supervisors alleged to be directly involved in termination decisions, holding

that they may lead to the discovery of admissible evidence. *See Digan v. Euro-Am. Brands, LLC*, 10 C 799, 2012 WL 668993, at *5 (N.D. Ill. Feb. 29, 2012) (citing *Byers v. Ill. State Police,* 99 C 8105, 2002 WL 1264004, at *13 (N.D. Ill. June 3, 2002); *Sykes v. Target,* 00 C 5112, 2002 WL 554505, at *4 (N.D. Ill. April 15, 2002)). That production, however, has been tempered by allowing the redaction or withholding of unlisted addresses and telephone numbers, social security numbers, marital status, medical and health insurance information, and credit information. *See Digan,* 10 C 799, 2012 WL 668993, at *5.

In this case, the Court concludes that Christian's and Poole's personnel files may shed light on specific topics about which their credibility may be at issue: Poole's denial that Modjeska reported a work-related injury, and Christian's direction that Chavez conduct a security interview of Modjeska. *See Brunker v. Schwan's Home Serv.*, *Inc.,* 583 F.3d 1004, 1009 (7th Cir. 2009). Christian's personnel file is also likely to include information on her change of positions at UPS following Modjeska's termination. Therefore, this portion of Modjeska's motion is granted with the proviso that UPS may redact or withhold from production any unlisted addresses and telephone numbers, social security numbers, marital status, medical and health insurance information, and credit information contained in the personnel files of Christian and Poole.

***Rule 30(b)(6) Deposition Issue***: Modjeska seeks to compel UPS to produce an individual who can provide Rule 30(b)(6) testimony regarding the circumstances

under which flights were chartered to make its Next Day Air service commitments prior to his termination, including the number and value of packages, if known; the reason for deciding to charter a flight; and the individuals involved in making the decision ("charter flight issue"). Modjeska has offered the possibility of a telephone deposition. (ECF Nos. 21, 26) In the alternative Modjeska proposes that UPS provide a full response to his initial discovery request seeking the identification of and all documents for all chartered flights during Christian's tenure as Hub Manager prior to September 2, 2011, and indicate whether the three previously disclosed flights were the only ones during that time.

### *UPS's Response*

UPS contends that the information sought is not relevant, Modjeska previously had the opportunity to discover the information during Christian's deposition but failed to ask the appropriate questions, and Modjeska's request is unduly burdensome.

### *Ruling*

The information sought is relevant to Modjeska's claims. Christian testified that if she had known that 75 rather than 35 packages had missed the September 1, 2011, flight, she could have called a division manager to request a chartered flight. Furthermore, Modjeska has offered to take the deposition by telephone to reduce expenses. Alternatively, he will be satisfied if UPS fully answers his prior interrogatory regarding chartered flights, as supplemented in his reply brief to include whether the three previously disclosed flights were the only ones chartered during

Christian's tenure.

This portion of Modjeska's motion is granted. By the stated deadline UPS must either produce a Rule 30(b)(6) witness for telephone deposition on the charter flight issue or provide a complete answer to Modjeska's prior interrogatory as supplemented in his reply brief.

## MOTION TO COMPEL EXPERT DISCOVERY

Modjeska seeks to compel UPS to produce reports and prior testimony provided by UPS's expert witness, neuropsychologist Dr. Deborah Anderson ("Anderson"), in other cases during the last four years, unless the materials are subject to confidentiality agreements which bar such production. For cases where production is limited by confidentiality agreements, Modjeska seeks production of redacted versions of the reports and prior testimony to the extent consistent with the confidentiality agreement.

### *UPS's Response*

UPS asserts that pursuant to Rule 26(a)(2)(B)(v), it disclosed the names of six other individuals for whom Anderson performed neuropsychological examinations and prepared expert reports in the last four years, and that it should not be compelled to produce the reports and testimony because: 1) neither UPS nor Anderson has authorization to produce the confidential patient health information of individuals not involved in this lawsuit; 2) the information is not relevant to this lawsuit; and 3) neither UPS nor Anderson has custody or control of copies of the transcripts from her

other cases.

### *Ruling*

Modjeska cites several Northern District of Illinois decisions holding that the type of information that he seeks is generally discoverable. *See e.g. Brown v. Overhead Door Corp.,* No. 06 C 50107, 2008 WL 1924885, at *1-2 (N.D. Ill. Apr. 29, 2008); *Expeditors Int'l of Wash., Inc. v. Vastera, Inc.,* No. 04 C 0321, 2004 WL 406999, at *3 (N.D. Ill. Feb. 26, 2004). UPS relies on *Morriss v. BNSF Ry. Co.,* 8:13CV24, 2014 WL 128393, at *4-6 (D. Neb. Jan. 13, 2014) which held that "absent some threshold showing of need, the broad discovery provisions of Rules 34 and 45 cannot be used to undermine the specific expert witness discovery rules in rules 26(a)(2)."

No decision of another district court is binding on this Court. However, the Court concludes that the approach in the Northern District of Illinois decisions is in accord with the liberal approach to discovery reflected by the Federal Rules of Civil Procedure and the case law of the court of appeals for this circuit. *Phillips v. Raymond Corp.,* 213 F.R.D. 521, 524 (N.D. Ill. 2003), articulated that approach well when addressing plaintiff Sammie Phillips' ("Phillips") discovery efforts involving an expert witness, Edward Caulfield ("Caulfield"), who had been retained by defendant Raymond Corporation ("Raymond"), as follows:

> [I]t is true that Raymond has explained that Caulfield does not view all forklifts, or all forklifts having open-rear stand-up operator compartments, as fungible—or even as

> similar in terms of risk factors. But that is precisely what juries are for: Phillips is entitled to try to persuade the trier of fact otherwise, and in so doing to try to demonstrate that Caulfield's opinions are not to be believed. To that end, Phillips is entitled to obtain chapter and verse of Caulfield's prior expressions of opinion about other forklifts and about other injuries sustained by their operators, so that the jury can carry out its proper role in determining whether the similarities or lack of similarities involved in the occurrence at issue here and the forklift at issue here carry more persuasiveness.

*Id*. (footnote omitted.)

*Brown,* 2008 WL 1924885, at *1, held that neither Illinois' medical provider-patient privilege, nor the protections of the Health Insurance Portability and Accountability Act ("HIPAA") were sufficient to prevent a defendant from discovering the prior testimony of a plaintiff's expert. *Brown*, held that pursuant to Fed. R. Civ. P. 26(b)(1) it is relevant to allow a party to

> explore [an] experts' prior testimony in hopes of uncovering inconsistencies between the opinions they intend to express in this case and the opinions expressed in other cases. Indeed, this type of inquiry is expressly contemplated by the federal rules of civil procedure, as evidenced by the requirement that an expert's written report must include "a list of all other cases in which, during the previous four years, the witness has testified as an expert at trial or by deposition."

*Id. See also*, *Abbott v. Lockheed Martin Corp.,* 06-CV-0701MJR, 2009 WL 839112, at *2 (S.D. Ill. Mar. 31, 2009).

Rule 26(a)(2)(B) governs only disclosure in expert reports, however, and it does not preclude parties from obtaining further information through ordinary

discovery tools. *See Expeditors Int'l.,* 2004 WL 406999, at \*3; *see also* Wright & Miller, 9A *Federal Practice & Procedure* Civ. § 2452 (3d ed. 2013). For example, an expert may be asked in a deposition about testimony given in other litigation beyond the four-year period specified in Federal Rule of Civil Procedure 26(a)(2)(B). *See* Adv. Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a).

Moreover, in asserting that Anderson's reports are privileged, UPS relies upon Wis. Stat. § 146.81 and *Johnson v. Rogers Mem'l Hosp.*, 770 N.W.2d 27 (Wis. 2005). Modjeska's action presents only federal claims, and the evidentiary privileges applicable to federal-question suits are given not by state law but by federal law. *See Nw. Mem'l Hosp.,* 362 F.3d at 926.

In a footnote UPS states that the Anderson reports may also be subject to HIPPA protections and other federal laws relating to patient privacy such as 42 C.F.R. Part 2 which relates to the confidentiality of alcohol and drug abuse patient records. (UPS Resp. 3 n.1.) (ECF No. 31.) This generalized and qualified contention does not sufficiently present a basis for denial of the motion.

Based on the foregoing, by the stated deadline UPS will be required to produce Anderson's reports from the six cases in which she served as an expert during the past four years. Relying on UPS's representation that neither it nor Anderson has possession or control of any transcripts of Anderson's depositions in those cases, such transcripts are not subject to production. *See Hagemeyer N. Am., Inc. v. Gateway*

*Data Scis. Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) (stating that a party need not produce documents or tangible things that are not in existence or within its control.)

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Modjeska's motion to compel (ECF No. 20) is **GRANTED**; and

Modjeska's Civil Local Rule 7(h) motion to compel expert discovery (ECF No. 29) is **GRANTED** with respect to the six Anderson reports and is **DENIED** with respect to the transcripts.

UPS **MUST COMPLY** with this Order no later than June 30, 2014.

Dated at Milwaukee, Wisconsin, this 19th day of June, 2014.

                                                **BY THE COURT:**

                                                */s/ Rudolph T. Randa*

                                                **HON. RUDOLPH T. RANDA**
                                                **U.S. District Judge**